IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 18-cv-1662 |
| v. | ) ) | Judge |
| FRONT DISCHARGE MIXER INC, an Indiana corporation; TRIPLE D INVESTMENTS, LLC, an Indiana limited liability company; and DIANE K. DAOUST, an individual. | ) ) ) ) ) ) | Magistrate Judge |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., one of its present trustees, for a cause of action against Defendants allege as follows:

## JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*., and under Florida's enactment of the Uniform Fraudulent Transfer Act (the "Florida UFTA"), Fla. Stat. § 726.101 *et seq.* This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c) and under 28 U.S.C. §§ 1331 and 1367.

2. Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is administered at its principal place of business in Rosemont, Illinois.

## PARTIES

3. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

4. Plaintiff Arthur H. Bunte, Jr., is a present trustee and fiduciary of the Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund in Rosemont, Illinois.

5. Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Fund, its participants, and its beneficiaries.

6. Defendant Front Discharge Mixer Inc ("Front Discharge Mixer") is a corporation organized under the laws of Indiana.

7. Defendant Triple D Investments, LLC ("Triple D Investments") is a limited liability company organized under the laws of Indiana.

8. Defendant Diane K. Daoust is an individual who resides in Florida.

## FACTUAL BACKGROUND

**I. The Atlas Controlled Group.**

9. Non-party Atlas Red-D Mix, Inc. ("Atlas") is a corporation organized under the laws of Indiana.

10. Atlas was previously bound by collective bargaining agreements with a certain local union affiliated with the International Brotherhood of Teamsters under which Atlas was required to contribute to the Fund on behalf of certain of its employees.

11.     Further, from January 1, 2010 at the latest to present, Defendant Diane K. Daoust has been Atlas's president and sole shareholder.

12.     Accordingly, on May 5, 2013, Diane K. Daoust owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote of Atlas or at least 80% of the total value of outstanding shares of all classes of stock of Atlas.

13.     Also, on May 5, 2013, Diane K. Daoust owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote of Front Discharge Mixer or at least 80% of the total value of outstanding shares of all classes of stock of Front Discharge Mixer.

14.     From March 2009 at the latest through May 5, 2013 at the earliest, Front Discharge Mixer leased equipment to Atlas, including a cement mixer that Atlas used in its business.

15.     Also, on May 5, 2013, Diane K. Daoust owned at least 80% of the membership interest of Triple D Investments and/or at least 80% of the profits interest or capital interest of Triple D Investments.

16.     Notably, in October 2006, Atlas transferred to Triple D Investments multiple parcels of commercial real estate that Atlas had owned in Florida, specifically 10971 and 10979 Enterprise Avenue in Bonita Springs, Florida (the "Enterprise Avenue Parcels").

17.     As a result, from October 2006 through present, Triple D Investments has owned the Enterprise Avenue Parcels.

18.     Further, during the period of October 2006 through present, Triple D Investments has paid annual real estate taxes in relation to the Enterprise Avenue Parcels.

19. In addition, Diane K. Daoust attached to her federal tax returns, including at least her federal tax returns for 2011 through 2013, a Schedule C in which she identified Triple D Investments as a "Business."

20. Also, on her federal tax returns, including at least her federal tax returns for 2011 through 2013, Diane K. Daoust deducted the amount of the real estate taxes paid in relation to Triple D Investments as a "business" loss.

21. Accordingly, on May 5, 2013, Atlas, Front Discharge Mixer, and Triple D Investments were a group of trades or businesses under common control (the "Atlas Controlled Group") and therefore constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

22. The Atlas Controlled Group is the "employer" for purposes of determining and assessing withdrawal liability under MPPAA.

## II. The Withdrawal Liability and the Judgment.

23. The Fund determined that on May 5, 2013, the Atlas Controlled Group permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Fund within the meaning of 29 U.S.C. § 1383 (the "Withdrawal").

24. As a result of the Withdrawal, the Fund determined that the Atlas Controlled Group incurred withdrawal liability to the Fund in the principal amount of $3,585,173.15, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

25. On September 19, 2013, the Atlas Controlled Group, through Atlas, received a notice and demand for payment of the Withdrawal Liability that the Fund had issued in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). In the Notice and Demand, the Fund notified the Atlas Controlled Group that its total withdrawal liability was

$3,585,173.15. Further, in the Notice and Demand, the Fund notified the Atlas Controlled Group that it was required to discharge its liability either in a lump sum or in monthly installment payments of $14,202.92 beginning on October 1, 2013.

26. From October 8, 2013 through January 27, 2014, the Pension Fund received from Atlas several Withdrawal Liability installment payments. However, neither Atlas nor any other person or entity has made any Withdrawal Liability installment payments since January 27, 2014.

27. Accordingly, on March 18, 2014, the Atlas Controlled Group, through Atlas, received a notice from the Fund pursuant to section 29 U.S.C. § 1399(c)(5)(A), in which the Fund advised the Atlas Controlled Group that its withdrawal liability payments were past due and forewarned the Atlas Controlled Group of the consequences of failing to pay its Withdrawal Liability. Specifically, the Fund advised the Atlas Controlled Group that if it did not make its past due Withdrawal Liability payments, the Atlas Controlled Group would fall into default on the Withdrawal Liability, and the Fund would refer the Atlas Controlled Group's account to the Fund's counsel for collection.

28. Despite receiving the past due notice, the Atlas Controlled Group failed to make required withdrawal liability payments to the Fund and fell into default within the meaning of 29 U.S.C. § 1399(c)(5)(A). Specifically, pursuant to 29 U.S.C. § 1399(c)(5)(A), the Atlas Controlled Group fell into default on May 18, 2014 (*i.e.*, the 61st day after the Atlas Controlled Group received the Past Due Notice).

29. Accordingly, on August 4, 2014, the Fund filed suit against Atlas in the United States District Court for the Northern District of Illinois to collect the Withdrawal Liability,

*Central States, Southeast and Southwest Areas Pension Fund et al. v. Atlas Red-D Mix, Inc.*, Case No. 14-cv-5929 (the "Lawsuit").

30. On February 20, 2015, the District Court entered a judgment against Atlas in the Lawsuit in the amount of $4,400,373.11 (the "Judgment," 14-cv-5929, N.D. Ill, Dkt No. 32.) The judgment amount consisted of delinquent Withdrawal Liability payments, pre-judgment interest on those payments, liquidated damages, and attorneys' fees and costs. The Judgment also provided that Atlas was liable for post-judgment interest.

31. Through March 6, 2018, the balance Atlas owes on the Judgment is $5,001,861.41, including post-judgment interest.

**III.   The Installment Sale Agreement.**

32. Upon information and belief, since no later than January 1, 2010, Diane K. Daoust has been the sole managing member and sole director of Triple D Investments.

33. As discussed, from October 2006 through present, Triple D Investments—not Diane K. Daoust personally—has owned the Enterprise Avenue Parcels.

34. Nonetheless, on June 25, 2013, Diane K. Daoust entered into an agreement with non-parties Kevin R. Manning and Naomi R. Manning (collectively, the "Mannings") in which she represented that she was the owner of the Enterprise Avenue Parcels and stated that she was agreeing to transfer ownership of those parcels to the Mannings after the Mannings made 60 installment payments in the amount of $1,000.00 by the 15th day of each month from July 2013 through June 2018 and then made a balloon payment of $85,000.00 by July 15, 2018 (the "Installment Sale Agreement").

35. Upon information and belief, the Mannings have made payments to Diane K. Daoust in relation to the Installment Sale Agreement during the period of July 2013 to present.

36. Further, upon information and belief, Diane K. Daoust has not provided to Triple D Investments any of the amounts she has received in relation to the Installment Sale Agreement, even though Triple D Investments owns the Enterprise Avenue Parcels.

## COUNT I – WITHDRAWAL LIABILITY (AGAINST DEFENDANTS FRONT DISCHARGE MIXER AND TRIPLE D INVESTMENTS)

37. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. This Count is brought against Defendants Front Discharge Mixer and Triple D Investments.

39. As a member of the Atlas Controlled Group, Front Discharge Mixer is jointly and severally liable to the Fund for the Withdrawal Liability.

40. Similarly, as a member of the Atlas Controlled Group, Triple D Investments is jointly and severally liable to the Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment on behalf of Plaintiffs and against Defendants Front Discharge Mixer and Triple D Investments, jointly and severally, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

  (i) $3,514,584.23 in withdrawal liability;

  (ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

  (iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

  (iv) attorneys' fees and costs.

  (b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

  (c) Such further or different relief as this Court may deem proper and just.

### COUNT II – WITHDRAWAL LIABILITY (AGAINST DEFENDANT DIANE K. DAOUST AS ALTER EGO OF DEFENDANT TRIPLE D INVESTMENTS)

  41. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

  42. This Count is brought against Defendant Diane K. Daoust.

  43. As discussed, upon information and belief, Diane K. Daoust has been the sole managing member and sole director of Triple D Investments since no later than January 1, 2010.

  44. Diane K. Daoust failed to operate Triple D Investments as a legal entity distinct from herself.

  45. For example, as discussed, Diane K. Daoust personally entered into the Installment Sale Agreement, even though Triple D Investments owns the Enterprise Avenue Parcels.

  46. Further, Diane K. Daoust has personally received the payments that the Mannings have made in relation to the Installment Sale Agreement.

  47. In addition, upon information and belief, Diane K. Daoust has never instructed the Mannings to make any payments relating to the Installment Sale Agreement to Triple D Investments instead of to her.

48. Further, upon information and belief, Diane K. Daoust did not maintain bank accounts in Triple D Investments' name. Instead, she used one or more personal bank accounts for Triple D Investments' income and expenses.

49. Also, upon information and belief, Triple D Investments did not follow any limited liability company formalities. For example, Triple D Investments did not have any meetings of members, and it did not keep any company minutes.

50. Accordingly, for all the reasons set forth above, Diane K. Daoust did not give sufficient respect to Triple D Investments' separate identity as a limited liability company.

51. Further, the facts show that Diane K. Daoust intended to defraud Triple D Investments' creditors, including the Fund (to which Triple D Investments owes the Withdrawal Liability), when she failed to preserve Triple D Investments' separate identity.

52. For example, the Installment Sale Agreement was executed on June 25, 2013, shortly after the May 5, 2013 Withdrawal that triggered the Withdrawal Liability.

53. In addition, as reflected in records obtained in the Lawsuit, Atlas—which Diane K. Daoust was the sole shareholder and president of—consulted the law firm of Scopelitis, Garvin, Light, Hanson & Feary, P.C. ("Scopelitis") during or around May 2011. In addition, according to those records, Atlas consulted Scopelitis again during or around the period of April 2013 through May 2013 (*i.e*., right around the date of the Withdrawal and shortly before the Installment Sale Agreement was executed).

54. Notably, Scopelitis is a firm that specializes in, among other things, consulting commercial entities and members of their controlled groups regarding withdrawal liability and representing those entities and controlled group members in withdrawal liability collection actions. In fact, Scopelitis was the firm that ultimately represented Atlas in the Lawsuit.

55. Given that Atlas consulted with Scopelitis multiple times before the Installment Sale Agreement was executed on June 25, 2013, upon information and belief Diane K. Daoust, as Atlas's president and sole shareholder, knew prior to the Installment Sale Agreement being executed that the members of the Atlas Controlled Group, including Triple D Investments, were jointly and severally liable for the Withdrawal Liability.

56. Also, from 2010 at the latest through present, Diane K. Daoust, in her capacity as managing member and director of Triple D Investments, has received the real estate tax bills for the Enterprise Avenue Parcels, which bills have been addressed to Triple D Investments (not Diane K. Daoust personally). Thus, from 2010 at the latest through present, including when she entered the Installment Sale Agreement and personally received payments relating thereto, Diane K. Daoust has known that Triple D Investments owns the Enterprise Avenue Parcels.

57. Further, upon information and belief, Triple D Investments did not receive any consideration in exchange for allowing Diane K. Daoust to receive the payments relating to the Installment Sale Agreement.

58. In addition, at the time of all or almost all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement during the period of July 2013 through present, Triple D Investments lacked—and was aware or reasonably should have been aware that it lacked—sufficient assets to pay the Withdrawal Liability.

59. Accordingly, as the above facts show, Diane K. Daoust intended to defraud Triple D Investments' creditors, including the Fund, by receiving the payments in relation to the Installment Sale Agreement, which payments should have instead gone to Triple D Investments.

60. Further, given that Diane K. Daoust personally received the payments relating to the Installment Sale Agreement, which should have instead gone to Triple D Investments and

been used to pay Triple D Investments' creditors, including the Fund, it would be inequitable to the Fund if this Court treated Diane K. Daoust and Triple D Investments as legally distinct.

61. Thus, for all the foregoing reasons, Diane K. Daoust is the alter ego of Triple D Investments.

62. Accordingly, Diane K. Daoust is personally liable for Triple D Investments' liabilities, including the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment on behalf of Plaintiffs and against Diane K. Daoust, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

    (i) $3,514,584.23 in withdrawal liability;

    (ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

    (iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

    (iv) attorneys' fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

**COUNT III - EVADE OR AVOID (AGAINST
DEFENDANTS DIANE K. DAOUST AND TRIPLE D INVESTMENTS)**

63. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64. This Count is brought against Defendants Diane K. Daoust and Triple D Investments.

65. Under 29 U.S.C. § 1392(c), withdrawal liability is to be determined and collected without regard to transactions done with a principal purpose of evading or avoiding withdrawal liability.

66. Here, the Installment Sale Agreement was executed on June 25, 2013, shortly after the May 5, 2013 Withdrawal that triggered the Withdrawal Liability.

67. Further, as discussed, given that Atlas consulted with Scopelitis multiple times before the Installment Sale Agreement was executed on June 25, 2013, upon information and belief Diane K. Daoust, as Atlas's president and sole shareholder, knew prior to the Installment Sale Agreement being executed that the members of the Atlas Controlled Group, including Triple D Investments, were jointly and severally liable for the Withdrawal Liability.

68. Thus, at the time of each payment that Diane K. Daoust has received in relation to the Installment Sale Agreement during July 2013 through present, Triple D Investments, through its managing member and director Diane K. Daoust, has known that it was liable for the Withdrawal Liability.

69. Also, as discussed, including in paragraph 56 above, from 2010 at the latest through present, Triple D Investments, through its sole managing member and director Diane K. Daoust, has known that it owns the Enterprise Avenue Parcels.

70. Further, upon information and belief, even though Triple D Investments knew that it owned the Enterprise Avenue Parcels, Triple D Investments did not receive any consideration for allowing Diane K. Daoust to receive the payments in relation to the Installment Sale Agreement.

71. Accordingly, based on the above facts, a principal purpose of the Installment Sale Agreement—and of Diane K. Daoust causing the Mannings to make the payments relating to that agreement to her instead of to Triple D Investments and not transmitting the amounts she received in relation to the Installment Sale Agreement to Triple D Investments—was for Triple D Investments to evade or avoid paying the Withdrawal Liability.

72. Thus, under 29 U.S.C. § 1392(c), the Withdrawal Liability is to be collected without regard to the Installment Sale Agreement and the payments made to Diane K. Daoust pursuant thereto.

**WHEREFORE**, Plaintiffs request the following relief:

(a) That this Court void and disregard the Installment Sale Agreement and the payments that Diane K. Daoust has received relating thereto;

(b) That this Court enter judgment against Defendant Diane K. Daoust and on behalf of Plaintiffs for the value of all payments that Diane K. Daoust has received in relation to the Installment Sale Agreement, plus pre-judgment interest;

(c) That this Court impose a constructive trust on all payments that Diane K. Daoust has received in relation to the Installment Sale Agreement and on any property purchased using said funds;

(d) Attorneys' fees and costs, as well as all applicable liquidated damages; and

(e) Such further or different relief as this Court may deem proper and just, including but not limited to the voiding of any transactions that any Defendant makes for a principal purpose of evading or avoiding the Withdrawal Liability after this Complaint is filed and a money judgment and/or constructive trust relating to any such post-Complaint transactions.

**COUNT IV – FLORIDA UNIFORM FRAUDULENT TRANSFER ACT
(AGAINST DEFENDANTS DIANE K. DAOUST AND TRIPLE D INVESTMENTS)**

73. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74. This Count is brought against Defendants Triple D Investments and Diane K. Daoust.

75. Under the Florida UFTA, "transfer" includes "every mode" of transferring "an asset or an interest in an asset," including "indirect" modes of transferring an asset or an interest therein. Fla Stat. § 726.102(14).

76. Accordingly, each time Triple D Investments, through its managing member and director Diane K. Daoust, allowed Diane K. Daoust to personally retain the amount of a payment relating to the Installment Sale Agreement, Triple D Investments indirectly made a transfer of its interest in that amount to Diane K. Daoust within the meaning of the Florida UFTA.

77. Further, the facts show that each time Triple D Investments allowed Diane K. Daoust to retain a payment relating to the Installment Sale Agreement that was made during the period of March 6, 2014 through present, Triple D Investments did so with actual intent to hinder, delay, and/or defraud the Fund in its attempt to collect the Withdrawal Liability, in violation of section 726.105(1)(a) of the Florida UFTA.

78. For example, each of the payments made in relation to the Installment Sale Agreement during the period of March 6, 2014 to present were made to an insider of Triple D

Investments, Diane K. Daoust, who has been Triple D Investments' sole managing member and director since no later than January 1, 2010.

79. In addition, as discussed, given that Atlas consulted with Scopelitis multiple times before the Installment Sale Agreement was executed on June 25, 2013, upon information and belief Diane K. Daoust, as Atlas's president and sole shareholder, knew prior to the Installment Sale Agreement being executed that the members of the Atlas Controlled Group, including Triple D Investments, were jointly and severally liable for the Withdrawal Liability.

80. Thus, at the time of each payment that Diane K. Daoust has received in relation to the Installment Sale Agreement during March 6, 2014 through present, Triple D Investments, through its managing member and director Diane K. Daoust, has known that it was liable for the Withdrawal Liability.

81. In addition, all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement during the period of March 6, 2014 through present were made after the Atlas Controlled Group received the Notice and Demand on September 19, 2013 and, thus, after the Atlas Controlled Group, including Triple D Investments, had incurred the Withdrawal Liability.

82. Further, under settled Seventh Circuit law, notice of withdrawal liability to one member of a controlled group constitutes notice to all members. *E.g.*, *Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 888 F.2d 1161, 1163-64 (7th Cir. 1989). Thus, all members of the Atlas Controlled Group, including Triple D Investments, received notice of the Withdrawal Liability when Atlas received the Notice and Demand on September 19, 2013.

83. As a result, all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement during the period of March 6, 2014 through present were made after the Atlas Controlled Group, including Triple D Investments, had been notified of the Withdrawal Liability through the Notice and Demand.

84. Also, as discussed, at the time of all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement, Triple D Investments knew that it—not Diane K. Daoust—owned the Enterprise Avenue Parcels.

85. Further, upon information and belief, despite knowing that it owned the Enterprise Avenue Parcels, Triple D Investments did not receive any consideration—let alone reasonably equivalent value—for allowing Diane K. Daoust to retain the payments she received in relation to the Installment Sale Agreement.

86. Also, at the time of all or almost all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement during the period of March 6, 2014 through present, Triple D Investments lacked—and was aware or reasonably should have been aware that it lacked—sufficient assets to pay the Withdrawal Liability.

87. Accordingly, for all the above reasons and upon information and belief, each time Triple D Investments allowed Diane K. Daoust to retain a payment relating to the Installment Sale Agreement that was made during the period of March 6, 2014 through present, Triple D Investments did so with actual intent to hinder, delay, and/or defraud the Fund in its attempt to collect the Withdrawal Liability, in violation of section 726.105(1)(a) of the Florida UFTA.

88. In addition, for the above reasons, including those set forth in paragraphs 85 through 86 above, each time Triple D Investments allowed Diane K. Daoust to retain a payment

relating to the Installment Sale Agreement that was made during the period of March 6, 2014 through present, Triple D Investments violated section 726.105(1)(b) of the Florida UFTA.

89. Also, at the time of all or almost all of the payments made to Diane K. Daoust in relation to the Installment Sale Agreement during March 6, 2014 through present—including all payments made after the Atlas Controlled Group, including Triple D Investments, fell into default on the Withdrawal Liability on May 18, 2014—Triple D Investments was insolvent.

90. Accordingly, every or almost every time that Triple D Investments allowed Diane K. Daoust to retain a payment relating to the Installment Sale Agreement that was made during March 6, 2014 through present—including each time it allowed Diane K. Daoust to retain payments made after the Atlas Controlled Group, including Triple D Investments, fell into default on the Withdrawal Liability on May 18, 2014—Triple D Investments violated section 726.106(1) of the Florida UFTA.

91. Thus, each time Triple D Investments allowed Diane K. Daoust to retain a payment relating to the Installment Sale Agreement that was made during the period of March 6, 2014 through present, Triple D Investments violated at least one provision of the Florida UFTA.

92. Further, each Florida UFTA violation that Triple D Investments committed during the period of March 6, 2014 through present was fraudulent as to the Fund because, given that Triple D Investments is jointly and severally liable for the Withdrawal Liability, the Fund was a present creditor of Triple D Investments when all of those violations were committed.

**WHEREFORE**, Plaintiffs request the following relief pursuant to §§ 726.018 and 726.019 of the Florida UFTA:

(a) A money judgment in favor of the Fund and against Diane K. Daoust in the amount of all payments that Diane K. Daoust has received in relation to the Installment Sale Agreement during the period of March 6, 2014 through present, plus pre-judgment interest;

(b) An attachment, levy of execution, or other provisional remedy against: (1) all payments that Diane K. Daoust has received in relation to the Installment Sale Agreement during the period of March 6, 2014 through present; and (2) any property purchased with said funds;

(c) An injunction prohibiting Defendant Diane K. Daoust from transferring (unless ordered to do so by this Court): (1) any payments that Diane K. Daoust has received in relation to the Installment Sale Agreement during the period of March 6, 2014 through present; and (2) any property purchased with said funds;

(d) An injunction preventing Triple D Investments from transferring away any funds or assets, including but not limited to the Enterprise Avenue Parcels, or any interests in any funds or assets unless it does so pursuant to an order of this Court or with the Fund's permission; and

(e) Such further or different relief as this Court may deem proper and just, including but not limited to a money judgment, provisional remedy, and/or injunction relating to any fraudulent transfers that any Defendant makes after this Complaint is filed.

Respectfully submitted,

*/s/Andrew J. Herink*
Andrew J. Herink (#6303510)
Central States Law Department
9377 W. Higgins Road
Rosemont, Illinois 60018
Telephone: (847) 939-2458
Fax: (847) 518-9797
Email: aherink@centralstatesfunds.org

March 6, 2018                                   ATTORNEY FOR PLAINTIFFS